IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| Select Marketing Solutions, Inc. | ) | Case No. 11 B 16396 |
| | ) | |
| Debtor. | ) | Hon. Carol A. Doyle |

**FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL
PURSUANT TO §363(c)(2) AND BANKRUPTCY RULE 4001(b)
AND GRANTING ADEQUATE PROTECTION**

The cause coming to be heard on the motion of Select Marketing Solutions Inc., Debtor and Debtor-in-possession (the "Debtor") for authority to use cash collateral pursuant to 11 U.S.C. §§361 and 363(c); after notice having been provided under Rule 4001 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and hearing; FirstMerit Bank, N.A. ("FirstMerit" or the "Bank") having agreed to the entry of this Order, this Court having conducted a preliminary hearing pursuant to Rule 4001(b)(2) of the Bankruptcy Rules on April 27, 2011, this Court having heard and considered the statements of counsel for the Debtor and FirstMerit and other parties in interest who appeared at said hearing, and no objection having been interposed to the relief sought at that hearing or all objections having been overruled after notice and hearing, and this Court being fully advised in the premises;

FIRSTMERIT AND THE DEBTOR STIPULATE AS FOLLOWS:

1. On April 18, 2011, (the "Court Petition Date"), Debtor filed with this Court its petition for relief under Chapter 11 of the Bankruptcy Code. Debtor is operating its business and managing its property as Debtor-in-possession pursuant to §1107(a) and §1108 of the Bankruptcy Code, and no Trustee having been appointed,

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334, venue is proper in this district, and this matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A)(K), (M) and (O).

3. FirstMerit and the Debtor have stipulated to the following matters of fact (which stipulation shall not bind any party in interest to this case):

   a. On the Petition Date, the Debtor was indebted to FirstMerit in the amount of Four Hundred Sixty Thousand Nineteen and 94/100 Dollars ($460,019.94) which debt arises from three commercial loans (collectively, the "Loans") for which the following amounts were then due:

| Loan Number: | Principal & Interest | Interest Per Diem |
|---|---|---|
| 542024101167001 | $324,561.29 | $ 55.75 |
| 542024101168000 | $ 51,786.78 | $ 9.49 |
| 542024101721001 | $ 83,671.87 | $ 15.59 |
| | $460,019.94 | |

The foregoing does not include the legal and other professional costs incurred by the FirstMerit which it may seek to charge under the terms of the agreements which agreements evidence and secure the Loans;

b. Prior to the Petition Date, the Debtor executed and delivered to FirstMerit or to Midwest Bank & Trust Company, formerly of Elmwood Park, Illinois ("Midwest Bank") certain documents to evidence the making of the Loans, to specify their terms, to provide security for their repayment and for other proper purposes, including without limitation Business Loan Agreements dated June 10, 2010 and July 19, 2010 (the "Business Loan Agreements") and a Commercial Security Agreement dated July 15, 2010 and July 19, 2010 (the "Security Agreement"), true copies of which are attached to this Order, respectively, as Exhibits 1 and 2;

c. FirstMerit is now the holder and owner, either in its own right, or by assignment from the Federal Deposit Insurance Corporation, as receiver for Midwest Bank, of the Loans, the Business Loan Agreements, the Security Agreement, and all of the documents and agreements which evidence and secure the Loans and the Note, including without limitation the promissory notes which were given, either to Midwest Bank or to FirstMerit to evidence the terms of the Loans)(all of which will sometimes be collectively referred to as the "Loan Documents");

d. FirstMerit holds a first priority and perfected security interest in substantially all of the Debtor's assets, including but not limited to accounts receivable, cash, inventory, equipment, general intangibles, chattel paper, documents and contract rights ("Collateral"), including all cash proceeds generated by the operation of Debtor's business, and products and proceeds thereof, all of which constitutes FirstMerit's Cash Collateral under §363(a) of the Bankruptcy Code (11 U.S.C. §363)("Cash Collateral");

e. FirstMerit's has consented to Debtor's use of Cash Collateral, but that consent is predicated on the understanding and the Debtor's binding promise that for every dollar which the Debtor expends, the Debtor will generate replacement account receivables based on new services provided with sufficient dollar amounts to cover Debtor's expenditures.

f. The terms of this Order represent a negotiated agreement between the Debtor and FirstMerit as and for the adequate protection of FirstMerit's Cash Collateral. Nothing in this Order shall be construed to prejudice or limit FirstMerit or the Debtor with respect to any claims or arguments as to the issue of adequate protection of FirstMerit's interest in its Collateral or the propriety of the termination or modification of the automatic stay pursuant to §362 of the United States Bankruptcy Code.

g. The Debtor asserts and the parties agree, without prejudice to any parties' right (including the Debtor and FirstMerit) to contest this figure at a later date, that as for the purpose of this order, on the Petition Date, the Debtor's Eligible Accounts Receivable, as defined hereafter, was One Hundred Sixty One Thousand Two Hundred Forty Four Dollars and Twenty-Eight Cents. ($161,244.28).

4. The conditions and authorizations set forth herein are intended to provide adequate protection of the secured interest of FirstMerit in its Cash Collateral and its other non-cash Collateral.

5. The Debtor and FirstMerit have entered into this Order in good faith.

THEREFORE, IT IS HEREBY ORDERED:

A. The stipulations set forth in paragraphs 1 through 5 above are hereby incorporated by referenced and agreed to by Debtor and FirstMerit (but this action does not transform the merits of the stipulations by and between FirstMerit and the Debtor into findings of this Court, or bind third parties as to the facts set forth in those stipulations).

B. In addition to the approximately Twenty-Six Thousand Dollars ($26,000.00) of FirstMerit's cash collateral which the Debtor has used prior to the entry of this Order, the Debtor is authorized to use Cash Collateral to pay the ordinary expenses of its business operations from the Petition Date through July 30, 2011, in accordance with the budget attached hereto as Exhibit "A" (the "Budget"), subject to the following conditions:

1. The funds which are currently held on deposit at the Bank shall not be used for any purpose, absent the Bank's consent or the entry of further Court order.

2. Absent the Bank's advance written consent or subsequent order of this Court, the Debtor may not pay more than 110% (on a cumulative basis beginning with the commencement of this Case) of the amount of expenses of the types described in each line item of the Budget.

3. The Debtor's authorization to use cash collateral is further limited in that from and after May 7, 2011, the Debtor may only use cash collateral to the extent that the value of the Debtor's cash on deposit (with FirstMerit or with other entities) plus the value of its "Eligible Accounts Receivable" exceeds the value of this cash, cash deposits and equivalents and Eligible Accounts Receivable as of the date its chapter 11 case commenced. For purposes of this Order, "Eligible Accounts Receivable" shall generally include all accounts receivable of the Debtor (as defined in the Uniform Commercial Code as adopted in Illinois), minus accounts receivable which are more than ninety (90) days past due, accounts receivable which are subject to offset or to a dispute known to the Debtor, and deposits billed to or received from customers involving purchase orders shall not constitute receivables nor be eligible to increase the total amount of post-petition receivables for the purpose of this paragraph..

C. FirstMerit has given consent to the Debtor's establishment of its Debtor in Possession operating accounts at other entities (the "DIP Account"), provided that no such entity may have a pre-petition claim of any kind against the Debtor. All Cash Collateral shall be deposited by the Debtor into the DIP Account. FirstMerit shall have a first priority lien on the DIP Account and the right to the funds deposited therein, with priority over all other liens, claims and offset rights of others, including the depository, except for such post-petition claims as may arise under the terms of the deposit agreement between the Debtor and the entity which holds the DIP Account. Upon request, the Debtor shall consent and take such actions as may be needed to enable FirstMerit to access the DIP Account (solely for informational purposes) online, and the Debtor shall automatically and promptly forward to FirstMerit all account statements which it may in the future receive from the entity which holds the DIP Account.

D. The Debtor will send the Bank a daily accounting of cash collateral used, which identifies the date, payee and amount of each payment, and the line item of the Budget to which the payment corresponds.

E. The Debtor shall deliver to the Bank on or before May 12, 2011, a capital requirements projection for each purchase order for goods which was open on the Petition Date, or which the Debtor received on or after the Petition Date (the "Capital Projection"). The Capital Projection shall itemize the following information:

1 The name of the customer;
2 The date and amount of the purchase order;
3 The amount of any deposit received by the Debtor for each such purchase order;
4 The date of receipt of any deposit received by the Debtor for each such purchase order;
5 The amounts, if any, spent by the Debtor, prior to the date of the report, to purchase goods, materials, parts, freight, insurance or other things, tangible or intangible, which are necessary to produce the finished product(s) described in each purchase order;
6 A projection of the future capital needs associated with each purchase order, which at a minimum, identifies the future costs which the Debtor expects it will need to pay to third parties in connection with the completion of each purchase order, and the projected date or dates for which those costs will need to be paid by the Debtor in order to produce the finished products described in the purchase orders; and
7 The next scheduled date and amount of payments which are projected to be due from the customers pursuant to each purchase order.

F. On or before May 9, 2011, the Debtor shall provide FirstMerit with legible copies of all open invoices which are associated with all open purchase orders which are outstanding with the Debtor's customers. On or after May 9, 2011, the Debtor shall promptly and routinely send FirstMerit copies of new invoices which it issues to its customers, as they are issued.

G. On or before May 9, 2011, the Debtor shall provide FirstMerit with a report or matrix which identifies the names, addresses, Debtor account (or billing) number and telephone numbers of each of its current customers. On or after May 9, 2011, the Debtor shall promptly and routinely send FirstMerit contact information, as set forth above, for any new customers of the Debtor, or for any past customers who place new orders with the Debtor whose information is not disclosed in the report due on May 9, 2011.

H. On or before May 12, 2011, the Debtor shall provide FirstMerit with a report which describes and values its inventory, as of the Petition Date and the date of the report, and, which identifies (and values) goods, materials or finished projects which are on hand on those dates, which pertain to specific and identified purchase orders (the Inventory Report). The Debtor will update the Inventory Report on a monthly basis.

I. On or before May 12, 2011, the Debtor shall provide FirstMerit with a report of aged accounts receivable, which exclude any accounts receivable which are not "Eligible Accounts Receivable" under the definition used in paragraph B (3) of the decretal portion of this Order.

J. To secure the claim of FirstMerit against the Debtor and to otherwise provide it with adequate protection for the Debtor's use of Cash Collateral, FirstMerit, upon the entry of this Order, and pursuant to this Order, shall have and hold binding, enforceable, perfected liens and security interests upon the Debtor's pre- and post-petition assets, of the types and categories of assets identified or described in the Business Loan Agreement and the Security Agreement.

K. All liens and security interests granted to FirstMerit by this Order shall be perfected without the necessity of filing or recording any additional documents.

L. Debtor will permit FirstMerit to inspect, upon reasonable notice, within reasonable hours, the Debtor's books and records or will cause records prepared by outside accounts on behalf of Debtor, to be delivered to FirstMerit upon request.

M. The Debtor shall maintain and pay premiums for insurance to cover all of its assets from fire, theft and water damages and all such insurance policies and endorsements shall be in an amount sufficient to cover the replacement value of the Debtor's equipment.

N. The Debtor shall, upon reasonable request, make available to FirstMerit evidence of that which constitutes its collateral or proceeds.

O. The Debtor shall provide FirstMerit, on the first business day of each month, beginning May 3, 2011 during the term of this order, with unaudited monthly financial statements, including a balance sheet and profit and loss statements, prepared by or on behalf of Debtor, a complete listing and aging of its accounts receivables and payables, income and expense reports and lockbox activity, and copies of its monthly Debtor-in-possession reports required by the Office of the United States Trustee.

P. The Debtor shall provide FirstMerit with such other information concerning its assets, liabilities, and business operations as may be reasonably requested by FirstMerit including, but not limited to annual financial statements and tax returns.

Q. The Debtor is authorized and directed to take such steps and execute whatever instruments and documents, if any, as are reasonably necessary to effectuate the terms and conditions of this Agreed Order.

R. The occurrence of any of the following events, unless and until specifically waived in writing by FirstMerit, shall constitute an event of Default hereunder which shall result in the termination of Debtor's authority to use Cash Collateral upon 48 hours prior faxed or emailed notice to Debtor and its counsel:

1. Debtor fails to comply with any material provision of this Order.
2. A Trustee or examiner is appointed for Debtor or a motion seeking such appointment is filed by the U.S. Trustee, or any other party in interest, alleging fraud, defalcation, criminal wrong doing or intentional tort by Debtor, which motion is not denied or withdrawn within 10 business days of its presentation.
3. If the Debtor's monthly receipts are less than 90% of the receipts projected to be received by the Debtor for such period in the Budget (on a cumulative basis measured from the Petition Date forward).
4. An Order modifying or terminating the automatic stay is entered without consent of FirstMerit as to any claimant seeking more than $5,000 from the Debtor.
5. Consummation of the sale of all or substantially all of the Debtor's assets.
6. The Effective Date of any Chapter 11 Plan for the Debtor.
7. This case is dismissed.
8. Debtor fails to make any post-petition deposit of any currently accruing employment tax liability.
9. Debtor fails to file any required Federal tax return by the due date of such return.

S. The failure of FirstMerit to declare a default does not constitute a waiver by any of the parties of the right to declare that the Debtor is in default.

T. Unless consented to in writing by FirstMerit, terminated earlier as provided herein, or extended by further order of court, the Debtor's use of FirstMerit's Cash Collateral shall terminate on July 30, 2011; provided however, that any termination of Debtor's use of FirstMerit's Cash Collateral will not affect the validity or operation of any liens, security interests or other adequate protection granted to

FirstMerit hereunder.

U. Neither the dismissal or conversion of this case shall affect validity or operation of any liens, security interests or other adequate protection granted to FirstMerit hereunder.

V. This Agreed Order is not, and shall not be considered a modification, alteration, revision, novation or change in the existing obligations of the Debtor to FirstMerit but is only for the purpose of providing FirstMerit with adequate protection for its secured interest in the Cash Collateral.

W. The Debtor shall serve parties in interest with a copy of this Order on or before May 10, 2011. Such parties shall have leave to file an objection to this Order on or before May 30, 2011. If such an objection is filed, FirstMerit may withdraw its consent to the further use of its Cash Collateral. No modification of this Order shall retroactively limit the rights of FirstMerit, or the protections afforded to FirstMerit, to the extent of Cash Collateral which has been used by the Debtor prior to the date of such modification.

ENTER:

_____
Hon. Carol A. Doyle,
United States Bankruptcy Judge

Dated: May 5, 2011

AGREED TO FORM AND SUBSTANCE:

__/s/ Monica C. O'Brien_____
Counsel for the Debtor and Debtor-in-Possession
Monica O'Brien, Esq.
Gregory K. Stern, P.C.
53 West Jackson Blvd., Suite 1442
Chicago, IL 60604
Tel: 312-427-1558
Fax: 312-427-1289
gstern3@flash.net
Attorney ID: 6216626


__/s/ Bruce Dopke_____
Counsel for FirstMerit Bank
Bruce Dopke, Esq.
P.O. Box 681246
Schaumburg, IL 60168-1246
Tel: 847-524-4811
Fax: 847-524-4131
bruce@dopkelaw.com
Attorney ID: 3127052

Select Marketing Solutions

|  | May | June | Month ended July | Total |
|---|---|---|---|---|
| Number of Weeks | 4 | 4 | 5 | 13 |
| **Cash Receipts** | | | | |
| Balance From April | 22,709 | | | 22,709 |
| Cash from Accounts Receivable | 100,000 | 130,000 | 150,000 | 380,000 |
| **Total Cash Receipts** | $ 122,709 | $ 130,000 | $ 150,000 | $ 402,709 |
| **Cash Disbursements** | | | | |
| Payroll | 23,300 | 23,300 | 34,950 | 81,550 |
| Commission | | | | - |
| Outside Labor | 6,450 | 5,000 | 5,000 | 16,450 |
| China Fabrication | 31,250 | 40,000 | 25,000 | 96,250 |
| Local Purchases | 1,200 | 1,200 | 1,200 | 3,600 |
| Production Supplies | 12,000 | 20,000 | 20,000 | 52,000 |
| Freight/Shipping | 3,250 | 3,000 | 1,500 | 7,750 |
| Advertising & Promotions | - | - | - | - |
| Auto Expenses | 2,200 | 2,200 | 2,200 | 6,600 |
| Computer | 250 | 250 | 250 | 750 |
| Dues & Subscriptions | 54 | 54 | 54 | 162 |
| Equipment Rental | 250 | 2,500 | 250 | 3,000 |
| Insurance-Liability | | | 400 | 400 |
| Insurance-Health | 585 | 585 | 585 | 1,755 |
| Insurance-Workmen's Comp | 656 | - | 656 | 1,312 |
| Insurance-Life | 450 | 450 | 450 | 1,350 |
| Miscellaneous | 1,000 | 1,000 | 1,250 | 3,250 |
| office Expense | 500 | 500 | 500 | 1,500 |
| Pension Payment | 800 | 800 | 1,200 | 2,800 |
| Postage & Messenger Service | 300 | 300 | 300 | 900 |
| Professional Fees | 2,500 | 2,500 | 2,500 | 7,500 |
| Telephone | | 1,000 | 1,000 | 2,000 |
| Rent | 6,000 | 7,300 | 7,300 | 20,600 |
| Real estate taxes | 3,333 | - | - | 3,333 |
| CAM | 697 | - | - | 697 |
| Utilities | 3,200 | 3,000 | 3,500 | 9,700 |
| Selling & Design Expense | 7,000 | 3,500 | 3,500 | 14,000 |
| Travel | 5,665 | 3,500 | 3,500 | 12,665 |
| Meal & Entertainment -Clients | 460 | 450 | 500 | 1,410 |
| Internet & Website Services | 165 | 250 | 250 | 665 |
| Federal Tax Deposit | 4,100 | 5,000 | 7,500 | 16,600 |
| State Tax Deposit | 650 | 700 | 1,050 | 2,400 |
| FUTA | 392 | - | - | 392 |
| SUTA | - | - | 250 | 250 |
| **Total Disbursements** | $ 118,657 | $ 128,339 | $ 126,595 | $ 373,591 |
| **Net Cash Flow Inflow for the month** | $ 4,052 | $ 1,661 | $ 23,405 | $ 29,118 |
| **Net Cash Balance per month** | $ 4,052 | $ 5,713 | $ 29,118 | $ 29,118 |

EXHIBIT A